UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE HUNTINGTON NATIONAL BANK, a national
banking association,

     Plaintiff,

v

BIG SKY DEVELOPMENT FLINT, LLC, a Michigan
limited liability company, BIG SKY
DEVELOPMENT GRAND RAPIDS, LLC, a
Michigan liability company, BIG SKY
DEVELOPMENT SALINE, a Michigan limited
liability company, IAN W. SCHONSHECK,
individually and AS TRUSTEE OF THE IAN W.
SCHONSHECK REVOCABLE LIVING TRUST
AGREEMENT DATED 12/11/90, AS AMENDED,
STEPHAN J. DACKIW,  individually and AS
TRUSTEE OF THE STEPHAN J. DACKIW TRUST
AGREEMENT, DATED 6/22/99, RICHARD J.
HARTIGAN, individually and AS TRUSTEE OF THE
RICHARD J. HARTIGAN TRUST AGREEMENT,
DATED 9/19/96, HYMAN STOLLMAN, individually
and AS TRUSTEE OF THE HYMAN STOLLMAN
REVOCABLE LIVING TRUST, DATED 10/28/93,
jointly and severally,

     Defendants.

Case No. 2:10-cv-10346

Hon. Avern Cohn
Magistrate Judge Mona K Majzoub

---

**STIPULATED ORDER APPOINTING RECEIVER**

Plaintiff, The Huntington National Bank ("Huntington") and all of Big Sky Development Flint, LLC ("Flint"), Big Sky Development Saline, LLC, and Big Sky Development Grand Rapids, LLC (collectively, the "Borrower"), and Ian W. Schonsheck, individually and as trustee of The Ian W. Schonsheck Revocable Living Trust dated December 11, 1990 (collectively, "Schonsheck"), Richard J. Hartigan, individually and as trustee of The Richard J. Hartigan Trust u/a/d September 19, 1996 (collectively, "Hartigan"); Stephan J. Dackiw, individually and as trustee of The Stephan J. Dackiw Revocable Trust dated June 22, 1999 (collectively, "Dackiw"); Hy Stollman, individually and as trustee of the Hy Stollman Revocable Living Trust dated October 28, 2993, as amended ("Stollman")  (collectively, the "Guarantors" and together with Borrower, the "Defendants") having stipulated to the entry of this Order, as evidenced by the signatures of their respective counsel below, and the Court being duly advised in the premises:

IT IS ORDERED THAT:

1.      Huntington is the first mortgage lienholder over the Property (defined below) and is entitled to receive all the rents, income, revenues and profits from the Property until such time as its March 13, 2003 loan, its  August 14, 2003 loan and its December 19, 2003 loan (collectively, the "Loans") to Borrower, including all interest, costs, expenses and taxes due thereunder or under any of the documents or executed in conjunction with or related to the Loan (the "Loan Documents"), has been paid in full.

2.      Commencing on the date this Order is entered, Barry P. Lefkowitz, One Towne Square, Suite 600, Southfield, MI  48076, is appointed as receiver ("Receiver") over all of Defendants' right, title and interest in and to the following (collectively, the "Collateral"):

a.      The real property and buildings located described on Exhibit A, Exhibit A-1 and Exhibit A-2, attached hereto and incorporated into this Order (collectively, the

-2-

"Property").

b.       All rents, income, royalties, issues, receipts, revenues, proceeds and profits accruing and to accrue from the operation of the Property or under present or future leases of or otherwise from the Property or any part thereof or any other portion of the Property, including, without limitation, minimum rents, additional rents, percentage rents, parking, maintenance, operation, tax and insurance contributions, proceeds of sale of electricity, gas, chilled and heated water and other utilities and services, royalties, the premium payable by any lessee upon the exercise of a cancellation, any privilege originally provided in any leases, and all proceeds payable under any policy of insurance for loss of rents, together with any and all rights and claims of any kind which Borrower may have against any lessee under such leases or any sub-tenants or occupants of the Property (the "Rents"), together with any and all security deposits, guarantees, letter of credit and other assurances of the tenant's performance under such leases.

c.       All buildings and improvements of every kind and description now erected or placed on the Property, and all fixtures and articles of personal property now or hereafter attached to or contained in or used in connection with the Property, including, without limitation, all furniture, apparatus, machinery, equipment, motors, elevators, fittings, radiators, furnaces, stoves, microwave ovens, awnings, shades, screens, blinds, office equipment, trash and garbage removal equipment, carpeting and other furnishings, and all plumbing, heating, lighting, cooking, laundry, ventilating, refrigerating, incinerating, air conditioning, conveyor, security, sprinkler, and other equipment and all fixtures and appurtenances thereof; and all renewals or replacements thereof or articles in substitution thereof (collectively, the "Improvements").

d.       All existing and future warranty claims, maintenance contracts, construction contracts, subcontracts, purchase agreements, land contracts, leases and other contract rights, instruments, documents, chattel papers, accounts and general intangibles with respect to or arising from the Property, the Improvements or any other portion of the Property, together with any amendments, modifications, extensions, renewals and addenda thereto, and all deposits, cash and non-cash proceeds and products thereof.

e.       All building permits, governmental permits, licenses, approvals and authorizations issued from time to time.

f.       All plans, specifications, surveys, studies, environmental reports, soil reports, title reports and the like.

g.       All payments, awards and other compensation, heretofore or hereafter to be made with respect to any of the Property as a result of (i) any taking by eminent

-3-

domain, either permanent or temporary ("taking"), including severance and consequential damage and change in myriad of streets (collectively, "taking of proceeds"), (ii) any loss or damage to any Improvements, (iii) any other injury to or decrease in the value of the Property or (iv) any and all refunds of impositions or other charges relating to the Property.

h.      All books, records, accounts or documents which are in any way related to any of the foregoing or in any way relate to the Property, the Improvements, or the operation of the same.

i.      All other property, estate, right and interest as described in the Loan Documents with Borrower, as amended from time to time.

3.      Immediately upon entry of this Order and continuing until expiration or termination of receivership, Defendants and their employees, trustees, agents, representatives and/or any entity controlled by them shall surrender to Receiver all Collateral.

4.      Receiver shall have the fullest powers and duties of a receiver permitted under applicable law and in equity.  Without limiting the generality of the foregoing, Receiver's authority, powers and duties include, but are not limited to, the right to:

a.      use, operate, manage, market, list for sale, sell, negotiate and execute sales agreements with potential buyers of the Property, control, insure, maintain, preserve, repair, restore, secure, safeguard and otherwise deal with all and every part of the Property and conduct the business thereat;

b.      complete any construction on the Property in the manner and form as Huntington deems advisable;

c.      make alterations, additions, renewals, replacements and improvements to or on the Property;

d.      exercise all rights and powers of Defendants with respect to the Property, whether in the name of Defendants or otherwise, including without limitation, the right to make, terminate, cancel, enforce or modify agreements, instruments, contracts, leases or licenses, obtain and evict tenants, and demand, sue for, collect and receive all rents of the Property and every part thereof;

e.      apply the receipts from the Property to the payment of Huntington in such order, priority and proportions as Huntington shall deem appropriate in its sole discretion after

-4-

deducting therefrom all expenses (including reasonable attorneys' and accountants' fees) incurred in connection with the aforesaid operations and all amounts necessary to pay taxes, other charges, insurance premiums and other expenses in connection with the Property, and place any excess sums in an interest-bearing account;

f.      keep the Property insured against loss and damage by fire and other casualty, and to provide extended coverage and public liability insurance; and

g.      employ such management companies and other personnel as are reasonably necessary to protect and maintain the Property and to carry out the purpose of this Order; and

h.      employ any professionals, including but not limited to, attorneys and accountants to assist the Receiver in connection with the performance of his duties.

5.      Defendants, their employees, officers, trustees, agents, representatives and/or any entity controlled by them are directed to cooperate with Receiver in the transition of the management of the Property and in obtaining all insurance required under the Loan Documents with Receiver named as an additional insured on all such policies, and shall not interfere in any manner whatsoever with Receiver's management or control of the Property.  Defendants shall make immediately available to Receiver all of Defendants' records concerning the Collateral so that Receiver may adequately account for any revenue collected or owing through the date Receiver is appointed.  If any Defendant and/or any entity controlled by any one or more Defendant shall have failed to turnover any of the Collateral upon the filing with the Court of a certification by Receiver to that effect, the Court may order county sheriff where the Property is located or any other duly-acting officer of the Court to enforce the terms of this Order, seize such property as approved by the Court, and county sheriff or other duly-acting officer of the Court shall be allowed to breach the peace to the extent necessary to fulfill the terms of this Order.

6.      Immediately upon entry of this Order and continuing until expiration or termination of the Receivership, Receiver is authorized to take any actions Receiver deems

reasonable and appropriate to exercise full and exclusive possession and control over the

Property, to prevent waste and to preserve, manage, maintain, secure, safeguard, sell, transfer, or

lease any whole or portion of the Collateral; provided, however, Receiver shall not sell or

otherwise dispose of any Collateral, or enter into any third party agreements to lease or otherwise

encumber the Collateral without, in each instance, first obtaining Huntington's written approval.

.  Receiver is authorized to remove any principal, officer, member, manager, employee,

representative or agent of the Borrower from control and/or management of the affairs of the

Property.

7.     Nothing contained in this Order shall be construed to or transfer title to the

Property to the Receiver and Receiver shall not take title to the Property or the Collateral.

8.     Receiver is authorized and directed to sell the Property together or separately,

subject to the following conditions:

      a.     The sale shall be a cash sale for the best price obtainable;

      b.     The terms and conditions of sale shall be appropriate in the reasonable business judgment of Receiver;

      c.     Subject to Huntington's consent, Receiver shall have the authority to take any actions the Receiver deems reasonable and appropriate in order to sell the Property including, but not limited to, retaining a broker and listing the Property for sale;

      d.     The sale of the Property shall be free and clear of any and all liens, claims, security interests and other encumbrances whatsoever, which shall be transferred to the net proceeds of sale of the Property ;

      e.     The sale shall be subject to the prior consent of Huntington and an order of the Court approving the sale upon notice to all parties in interest and a hearing.

9.     Any private sale of the Property pursuant to an order of the Court as authorized in

paragraph 8 above, of which notice to all interested parties has been given and a hearing has

been held thereon, shall be exempt from the provisions of 28 U.S.C. 2001 (a) and (b) requiring

the appointment of three disinterested persons to appraise such Property, requiring the sale of the

Property for at least two-thirds appraised value, and requiring the publication of any such

proposed sale of the Property in a newspaper of general circulation at least ten days before the

hearing on the confirmation of the sale.

10.     All payments made or proceeds received by Receiver related to any Collateral

arising from the use, lease, sale, assignment, transfer or other disposition of the Collateral shall

be remitted to Huntington for application to Defendants' indebtedness to Huntington.  No

Collateral or proceeds of Collateral shall be on deposit with any financial institution except

Huntington or as otherwise approved by Huntington.

11.     a.   Receiver and his professionals, including attorneys and accountants, shall
receive reasonable and customary compensation for their services. Receiver shall not charge any
real estate commission on the sale of the Property unless previously approved by Huntington in
writing. Receiver and his professionals' compensation shall be invoiced and paid on a monthly
basis subject to Section 11(c) below.  Receiver and his professionals shall provide counsel for
Plaintiff a copy of their itemized monthly statements.

b.   Receiver's and his professionals' compensation shall be paid (1) first from
funds collected from operation of the Property after expenses of operation of the Property, and
(2) next, by Plaintiff, but only to the extent that funds collected from operation of the Property
are insufficient to pay the Receiver's and his professionals' compensation.

c.   Receiver and his professionals may receive payment on a monthly basis for
fees, costs and expenses, without further court order, provided no objections are filed with
Receiver or its counsel, as the case may be, within ten (10) days after such invoices are mailed to
the parties to this action, through their respective counsel.  In the event one or more objections
are timely filed, Receiver or any other party may file a motion with the Court to determine the
propriety of the fees sought or of the objection(s).

12.     Subject to 11, above, the Receiver shall first apply all sums received from the

operation of the Property to cover the expenses of managing and securing the property (the

"Operating Expenses").  Operating Expenses shall mean all ordinary and normal expenses of

operation determined on an accrual basis, including annualized property taxes, insurance premiums (or taxes and/or insurance impounds, if taxes and/or insurance are impounded by Receiver), utilities, repair and maintenance, capital replacements, actual reserves for repairs and replacements, salaries and wages, commissions paid to any leasing agent, and reasonable advertising and marketing expenses.  After the payment of the Operating Expenses, Receiver shall remit the remaining proceeds to Huntington for use and application as provided for in the Loan Documents.

13.     During the pendency of this lawsuit and until further order of the Court, Defendants shall be solely responsible for payment of the Operating Expenses of the Property and they covenant and agree to promptly pay all Operating Expenses of the Property, through the Receiver, incurred each month, and to provide additional funds that may be necessary to satisfy the payment of the Operating Expenses, if the rents and income of the Property are insufficient. Should Receiver not have sufficient funds to pay all of the ordinary and necessary Operating Expenses arising from this Order, the receivership created hereby, the actions and/or operations required hereunder, including without limitation, costs incurred by the Receiver to retain any persons in connection with the operation of the Collateral, Receiver shall notify Huntington and Defendants of the amount of such insufficiency (the "Deficiency").  Defendants shall, within five (5) days of such notification, advance the amounts necessary to pay the Deficiency.  If Defendants fail to remit to the Receiver sums sufficient to defray the Deficiency, Huntington may, in its sole discretion (without being under any obligation to do so), advance its own funds to pay such portion of the Deficiency as Huntington may agree that Receiver may pay.  The repayment of all such funds advanced by Huntington shall be (w) treated as advances under the

-8-

Loan, (x) secured by the Loan Documents, (y) afforded priority and prime lien status of all other liabilities of Defendants but for the fees and agreed upon expenses of Receiver, and (z) added to any judgment entered in this action, and payable thereunder.  Notwithstanding the foregoing, Huntington shall not be obligated to make any advances to or for the account of Defendants to pay any sums, nor shall Huntington be obligated to incur any liability or obligation for the account of Defendants.

14.     The Receiver shall prepare and file with the Court within sixty (60) days after the date of this Order, and every sixty (60) days thereafter, so long as any part of the Collateral or the income of proceeds remains in his possession or care and within sixty (60) days after termination of the receivership, a full and complete report, setting forth all receipts and disbursements, and reporting all acts and transactions regarding the execution of the trust of his office of Receiver, including a current inventory of the funds, assets and property in his possession, all interest in and claims against them, the current and anticipated income, all debts and obligations contracted and expenditures made by him, and the Receiver shall serve copies on the attorneys of record for all parties.

15.     Should the net proceeds of any mortgage foreclosure sale of the Property or any of the Collateral be insufficient to pay in full any indebtedness of Defendants to Huntington, any excess proceeds collected during the receivership created hereby until the exercise of the right of redemption, if applicable, shall be paid on a monthly basis (including during any redemption period) to Huntington to be applied to such deficiency.

16.     Neither Huntington nor Receiver shall be liable for any claim, obligation, liability, action, cause of action, cost or expense of Defendants or the collateral arising out of or

relating to events or circumstances occurring prior to this Order, including, without limitation, any contingent or unliquidated obligations and any liability from the performance of services rendered by third parties on behalf of any Defendant, and any liability to which any Defendant is currently or may ultimately be exposed under any applicable laws pertaining to the ownership, use or operation of the collateral in operation of Defendants' business (collectively all of the foregoing is referred to as "pre-Receivership liabilities").

17.    Receiver and his employees, agents, representatives attorneys and accountants shall have no personal liability in connection with any actions or activities taken or to be taken in furtherance of performing Receiver's duties and carrying out the responsibilities outlined in this Order, and they shall have no claim asserted against them relating to Receiver's duties under this Order, except for claims due to their gross negligence, gross or willful misconduct, malicious acts and/or the failure to comply with this Court's orders.  Any execution of documents made by Receiver pursuant to the rights and powers conveyed by this Order shall be construed as having been made by Receiver solely and exclusively in his capacity as court-appointed Receiver, and not an actual party to this action or to any such agreement or writing.

18.    Except by leave of this Court, Defendants, and each one of them, and all other persons, creditors and entities are stayed from initiating, commencing, continuing or taking any action to establish or enforce any claim, right or interest against, Borrowers, Receiver, the Property, or Receiver's duly authorized agents acting in their capacities as such, including but not limited to, any one or more of the following actions:

a.    Commencing, prosecuting, litigating or enforcing suit, including, without limitation, filing construction lien claims or initiating or continuing construction

or other lien foreclosure actions, except that the actions may be filed to toll any applicable statute of limitations;

b.      Accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to take possession of, or retaining possession of, property of Borrower that relates in any way to the Property, or attempting to foreclose, forfeit, alter or terminate Borrower's interest in the Property, whether such acts are part of a judicial proceeding or otherwise;

c.      Using self-help or executing or issuing, or causing the execution or issuance of any court attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon the Property; or

d.      Doing any act or thing to interfere with Receiver taking control, possession or management of the Property, or to in any way interfere with Receiver or the duties of Receiver or his agents; or to interfere with the exclusive jurisdiction of this Court over the Property.

19.      Defendants, their principals, members, managers, officers, employees, representatives, agents, attorneys, accountants and anyone acting on behalf of, in concert with or in participation with them, and those having claims against the Property who receive notice of this Order, are restrained and enjoined from, and shall not, directly or indirectly:

a.      Commit or permit any waste on all or any part of the Property, or suffer or commit or permit any act on all or any part of the Property in violation of law, or remove, transfer, encumber or otherwise dispose of any of the Property.

b.      Demand, collect, receive, discount, or in any way divert or use any of the Rents.

c.      Terminate or withhold any electric, gas, water, sewer, telephone or other utility service supplying the Property, require any utility deposit or otherwise interfere with the continued operations of the Property.

d.      Directly or indirectly interfere in any manner with the discharge of Receiver's duties under this Order or Receiver's possession of and operation or management of the Property.

e.      Expend, disburse, transfer, assign, sell, convey, devise, grant, pledge, mortgage, create a security interest in, encumber, conceal or in any manner whatsoever deal in,

dissipate, convert or dispose of the whole or any part of the Property including, but not limited to, the Rents.

      f.   Do any act which will, or which will tend to impair, defeat, divert, prevent or prejudice the preservation of the Property, including the Rents, or the preservation of Huntington's interest in the Property and the Rents, including without limitation, destroying, mutilating, erasing, altering, concealing or disposing of, in any manner, any document or record that relates to the Property.

20.    Receiver's duty to act in this capacity is subject to the written acceptance and approval of the terms of this Order.  Upon acceptance, Receiver shall be bound by the terms of this Order, and all obligations imposed hereby.

21.    Receiver and his professionals shall not be responsible or required to, and shall not, prepare or file tax returns in connection with the Property or the Borrower or otherwise wind down the business affairs of the Property or the Borrower.  Borrower shall have access to the Receiver's books and records relative to the Property as necessary for the preparation of Borrower's tax returns.

22.    Nothing contained in this Order shall alter, modify, subordinate or impair any existing rights, interests or remedies of Huntington. This Order shall not prejudice Huntington's foreclosure of its mortgages, either judicially or by advertisement or an action by Huntington under any security agreement or the Uniform Commercial Code with respect to the Collateral, or any of Huntington's other claims as set forth in the Complaint as may be amended.

23.    This Order shall be binding upon each of Defendants and its or their respective successors and assigns, including without limitation, any trustee, responsible person, estate administrator, representative or similar person appointed for or in connection with such entity's or person's estate or affairs.

Dated: February 04, 2010        s/Avern Cohn                     
                                         UNITED STATES DISTRICT JUDGE

WE STIPULATE TO THE ENTRY OF THIS ORDER:

BARRIS, SOTT, DENN & DRIKER, PLLC      CHARLES J. TAUNT & ASSOCIATES,
P.L.L.C.

By:_____/s/ Josh J. Moss_____    By: _____/s/ Erika D. Hart (w/permission)_____
        C. David Bargamian (P43742)            Charles J. Taunt (P24589)
        Josh J. Moss (P64406)                  Erika D. Hart (P67457)
Attorneys for Plaintiff The Huntington       Attorneys for Defendants
National Bank                             700 East Maple Road, Second Floor
211 West Fort St., 15th Floor            Birmingham, Michigan 48009-6359
Detroit, MI 48226-3281                 (248) 865-3700
(313) 965-9725

                                       DATE: January 29, 2009
DATE:  February 3, 2010

DOCS-#386414-v1-Huntington_Big_Sky_Federal_Court_Receiver_ORder.wpd