UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE HUNTINGTON NATIONAL BANK, a national
banking association,

    Plaintiff,

-vs-

Case No.10-10346
Hon: AVERN COHN

BIG SKY DEVELOPMENT FLINT, LLC, a Michigan
limited liability company, BIG SKY DEVELOPMENT
GRAND RAPIDS, LLC, a Michigan limited liability
company, BIG SKY DEVELOPMENT SALINE, a
Michigan limited liability company, IAN W.
SCHONSHECK, individually and as TRUSTEE OF
IAN W. SCHONSHECK REVOCABLE LIVING TRUST
AGREEMENT DATED 12/11/90, AS AMENDED,
STEPHAN J. DACKIW, individually and AS TRUSTEE
OF THE STEPHAN J. DACKIW TRUST AGREEMENT,
DATED 6/22/99, RICHARD J. HARTIGAN, individually
and AS TRUSTEE OF THE RICHARD J. HARTIGAN
TRUST AGREEMENT, DATED 9/19/96, HYMAN
STOLLMAN, individually and AS TRUSTEE OF THE
HYMAN STOLLMAN REVOCABLE LIVING TRUST,
DATED 10/28/93, jointly and severally,

    Defendants.
_____/

# MEMORANDUM AND ORDER GRANTING BARRY COHEN'S

# MOTION TO INTERVENE

## I. INTRODUCTION

This is a contract case. Defendants Big Sky Development Flint, LLC; Big Sky Development Grand Rapids, LLC; and Big Sky Development Saline, LLC (collectively Big Sky Defendants) are Michigan Limited Liability Companies. Plaintiff Huntington

National Bank (Huntington) made loans to each Big Sky Defendant which were secured by mortgages on real property located in Flint, Grand Rapids, and Saline, Michigan. After the Big Sky Defendants defaulted on the loans, Huntington filed this action.[1] The parties agreed to a stipulated order appointing a receiver which was entered by the Court (Doc. 6).

Now before the Court is Barry Cohen's (Cohen) motion to intervene. Cohen says that he is a member of Big Sky Partners, LLC and Big Sky Partners II, LLC which are members of the Big Sky Defendants. Cohen says that the Big Sky Defendants' approval of the stipulated order violated the terms of the Operating Agreements of the Big Sky Defendants because it was agreed to without first obtaining consent of a majority interest of the members. Huntington and the defendants say that Cohen is not a member of Big Sky Partners or Big Sky Partners II and, therefore, should not be permitted to intervene. For the reasons that follow, Cohen's motion is GRANTED.

## II. FACTS

### A. The Big Sky Defendants

The Big Sky Defendants were organized in 2003 for the purpose of purchasing and developing real property into storage facilities. Ian Schonsheck (Schonsheck) serves as the manager of each Big Sky Defendant. The membership interests in the

---

[1] The complaint also named Ian W. Schonsheck, individually and as Trustee of the Ian W. Schonsheck Revocable Living Trust Agreement dated 12/11/90 as amended, Stephan J. Dackiw, individually and as Trustee of the Stephan J. Dackiw Trust Agreement dated 6/22/99, Richard J. Hartigan, individually and as Trustee of the Richard J. Hartigan Trust Agreement dated 9/19/96, Hyman Stollman, individually and as Trustee of the Hyman Stollman Revocable Living Trust dated 10/28/93. These individuals and trusts served as guarantors of the loans made by Huntington.

Big Sky Defendants is as follows:

> Big Sky Development Flint, LLC:[2]
> - Build Fund of Michigan Trust (59.18%)
> - Build II, LLC (0.82%)
> - Big Sky Partners II, LLC (40.00%)
>
> Big Sky Development Grand Rapids, LLC:[3]
>
> - Build Fund of Michigan Trust (56.44%)
> - Big Sky Partners II, LLC (43.56%)
>
> Big Sky Development Saline, LLC:
>
> - Build Fund of Michigan Trust (50.00%)
> - Big Sky Development Partners, LLC (50.00%)

The operating agreements of the Big Sky Defendants are substantially similar.

Each includes the following provisions:

> Limitation on Powers: No act shall be taken, sum expended, decision made, obligation incurred, or power exercised by any Manager on behalf of the Company except by the consent of the Majority Interest with respect to:
> (a) any sale, conveyance, mortgage, grant or a security interest in, pledge, exchange or other disposition, or encumbrance of all or part of the Property, the Project or any other Company property;
> (d) a transaction involving an actual or potential conflict of interest between a Member and the Company;
> (g) confession of judgment against the Company

---

[2] Big Sky Partners II initially held a 50% interest, which was to be reduced based on the performance of certain conditions. The Court has received no information regarding the performance of these conditions; Schoncheck stated in an affidavit that the ownership interest is now 40%.

[3] Big Sky Partners II initially held a 50% interest, which was to be reduced based on the performance of certain conditions. The Court has received no information regarding the performance of these conditions; Schoncheck stated in an affidavit that the ownership interest is now 40%.

3

The operating agreements further define Majority Interest as "those Members holding more that 75% of the Membership percentages held by the Members."

### B. Big Sky Development Partners and Big Sky Partners II

Big Sky Development Partners, LLC (Big Sky One) and Big Sky Partners II, LLC (Big Sky Two) are two of a number of Limited Liability Companies organized by a group of individuals to purchase and develop real property in Michigan.[4] Membership interests in Big Sky One and Big Sky Two are as follows:

Big Sky One:

- The Schonsheck Trust (33.0%)
- The Hartigan Trust (6.0%)
- The Dackiw Trust (6.0%)
- Wayne Robert (5.0%)
- The Stollman Trust (25.0%)
- U.S. Storage Depot, assigned to Barry Cohen (25.0%)

Big Sky Two:[5]

- The Schonsheck Trust (30.0%)
- The Hartigan Trust (10.0%)
- The Dackiw Trust (10.0%)
- U.S. Storage Depot, assigned to Barry Cohen (50.0%)

The operating agreements of the Big Sky Defendants are substantially similar. Each designates Schonsheck as Managing Director. Each includes the following

---

[4]Other entities organized by the same group of individuals are Big Sky Ann Arbor, Big Sky Battle Creek, Big Sky Clinton Township, Big Sky Grandville, Big Sky Lansing, and Big Sky Michigan Avenue.

[5] Schonsheck says in an affidavit that the membership interests in Big Sky Two are as follows: Shoncheck (15%), Hartigan (5%), Dackiw (5%), Hagen/Cohen (25%), Build Fund (50%). However, Cohen's 2008 Schedule K-1 lists his membership interests as 50%. For purposes of this motion, the Court will use Cohen's enumeration of membership interests because he has provided documentation in support of it.

provisions:

> Super Majority Vote: A super majority vote of the Members of the Company, based on Ownership Percentage Interest, shall be required prior to approval of any of the following matters: . . . e) a transaction involving an actual or potential conflict of interest between the Managing Director and the Company, . . . h) the sale, exchange, lease or other transfer of all or substantially all of the assets of the Company other than in the ordinary course of business.

A super majority is defined as a vote of the Members holding 80% of the ownership interest in the company.

The operating agreements also contain specific requirements regarding the transfer or assignment of ownership interests. Upon receiving an offer to sell a membership interest, the company has a first option to purchase and liquidate the member's shares. The other members then have a second option to purchase the shares on a pro rata basis. Only after these options have been rejected may a member transfer shares to a non-member transferee. The operating agreement states the following rights upon transfer of membership shares:

> 4.7 <u>Transferee's Rights</u>. Notwithstanding the voluntary or involuntary sale, transfer, assignment, encumbrance, pledge, conveyance, or other disposition of part or all of any Shares, whether or not in compliance with the provisions of the Article 4, under no circumstances shall an actual or purported purchase, assignee, transferee, Qualified Purchaser, Successor, creditor, or other party (collectively "Transferee") be admitted as a substitute Member except in accordance with Section 4.8. No Transferee shall have any right to vote on or participate in the affairs of the Company, to receive any Company information or an accounting of Company funds or affairs unless and until the Transferee shall qualify and be admitted as a Member in accordance with Section 4.8. A Qualified Purchaser and Member Successor who is not admitted as a Member shall be entitled only to the allocations and distributions provided to such

Shares in accordance with this Agreement.

4.8 <u>Admission as Member</u>. A Qualified Purchaser or Member Successor (collectively "Qualified Transferee") shall be admitted to the Company as a substitute Member only on satisfaction of all of the following terms and conditions:

4.8.1 Members holding all of the outstanding Ownership Percentage Interests in the Company entitled to vote consent to the prospective new Member's or Transferee's admission as a member.

4.8.2 The Qualified Transferee shall furnish to the Company the Qualified Transferee's taxpayer identification number and any and all other information necessary or appropriate for the Company to file all required federal and state income tax returns.

4.8.3 The prospective new Member or Transferee shall execute and deliver to the Company, by which the prospective new Member or Transferee agrees to be bound by all of the terms and provisions of this Agreement and agrees that the Ownership Percentage Interest acquired by the prospective new Member or Transferee shall be subject to all of the transfer restrictions under Article IV of this Agreement.

4.8.4 The prospective new Member of the Seller or the Transferee shall reimburse the Company for all reasonable costs and expenses the Company incurs in connection with the issuance of or transfer of the Shares and in obtaining compliance with the terms and provisions of this Agreement.

**C. U.S. Storage Depot's Assignment of Membership Interests to Cohen**

On July 31, 2008 Ronald Hagen Sr., Ronald Hagen Jr., Executive A.I.D., Great Northern Start Limited Partnership, and U.S. Storage Depot, LLC (collectively assignors) assigned all of their membership interests in Big Sky One and Big Sky Two

to Cohen.[6] Cohen says that the assignment complied with Big Sky One and Big Sky Two's requirements regarding the transfer of membership interests.[7]

Cohen says that, in accordance with Section 4.8.2 of the operating agreements, he provided Big Sky One and Big Sky Two with his tax identification number. However, Schonsheck says that the members of Big Sky One and Big Sky Two never consented to his admission as a member. Cohen has proffered no proof that such consent was given. In contrast, meeting minutes show that Cohen was admitted as a voting member of Big Sky Development Ann Arbor and Big Sky Development Clinton Township and as a non-voting member of Big Sky Development Lansing and Big Sky Development Michigan Avenue.

Cohen says that he believed he was a member of Big Sky One and Big Sky Two based on his interaction with the companies' management. He says that he received notice of annual member meetings along with proxy voting forms. He also says that he received weekly and monthly Member reports and management summaries and was provided financial information about Big Sky One and Big Sky Two upon request. While he received cash and capital calls for other Big Sky entities, he says that he did not receive them for Big Sky One, Big Sky Two, or the Big Sky Defendants. Finally, he says that he provided all information requested by Big Sky One and Big Sky Two with

---

[6] The assignors also assigned their interests in Big Sky Development Ann Arbor, Big Sky Development Battle Creek, Big Sky Development Clinton Township, Big Sky Development Grandville, Big Sky Development Lansing, Big Sky Development Michigan Avenue, Sterling Group of Michigan L.P., and Ford Lilley Group LLC.

[7] Big Sky Defendants do not dispute that the assignment was valid. Huntington says that the assignment was invalid, but provides neither reasoning nor support for that conclusion.

7

respect to membership and was never informed that he had failed to meet all of the necessary requirements. He says that he did not pursue all of the requirements listed in the operating agreement because Big Sky One and Big Sky Two treated him in a manner that made him believe he was already a member.

## D. The Current Dispute

In 2003 Huntington loaned the Big Sky Defendants the where with all to purchase real property. The loans were secured by mortgages on the properties that were purchased. Huntington also received guarantees from a number of investors in the Big Sky Defendants. The guarantors were Ian Schonsheck, Stephan Dackiw, Richard Hartigan, and Hyman Stollman (collectively the guarantors). Each guarantor executed a guarantee in an individual capacity and as trustee for a trust held in his name (collectively the guarantee defendants).

Under the terms of the mortgages, the Big Sky Defendants were required to pay real estate taxes on the properties and, upon maturation of the loans, were required to pay in full all unpaid principle, interest, and other sums owed pursuant to the loan documents. When the mortgages matured, the Big Sky Defendants were unable to pay the unpaid principle and interest still owning under the loans. In addition, they had failed to pay real estate taxes as required. Claiming that the Big Sky Defendants were in default, Huntington filed this action on January 26, 2010 seeking more than $13 million still owing under the mortgage agreements.

The parties reached a partial resolution of their dispute. The Court entered a stipulated order appointing a receiver (Doc. 6) on February 4, 2010. The order appoints Barry Lefkowitz as receiver of the Big Sky Defendants' assets and permits him to

8

manage and otherwise dispose of the Big Sky Defendants' assets. The order includes a confession of judgment against each defendant as well as a complete waiver and release of all claims that the defendants may have had against Huntington. The order also increased the interest rate for the unpaid loans and required defendants to make a $300,000 payment to Huntington. As consideration Huntington agreed to a forbearance period until September 30, 2010 during which it would refrain from entering the consent judgment or pursuing the guaranty defendants.

Cohen asserts that the Big Sky Defendants did not seek consent from the Build Fund of Michigan Trust or Build II before approving the stipulated order on behalf of the Big Sky Defendants. Cohen further asserts that defendants did not give notice to or seek approval from the members of Big Sky One or Big Sky Two before approving the stipulated order.

### III. THE LAW

A non-party seeking intervention must satisfy four elements before intervention as of right pursuant to FED. R. CIV. P. 24(a) will be granted:

> (1) that the motion to intervene was timely; (2) that they have a substantial legal interest in the subject matter of the case; (3) that their ability to protect that interest will be impaired in the absence of intervention; and (4) that the parties already before the court may not adequately represent their interest.

Grutter v. Bollinger, 188 F.3d 394, 397-98 (6th Cir. 1999) (citing Jansen v. City of Cincinnati, 904 F.2d 336, 340 (6th Cir. 1990)).[8]

---

[8] FED. R. CIV. P. 24(a) states "On timely motion, the court must permit anyone to intervene who: (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing

9

The determination of whether a motion is timely is within the discretion of the trial court. Bradley v. Milliken, 828 F.2d 1186, 1191 (6th Cir. 1987) (citing NAACP v. New York, 413 U.S. 345, 365-66 (1973)). A court must consider all relevant circumstances including the purpose of the motion to intervene, the length of time the non-party has known of his interest in the case, potential prejudice to the parties, and the stage to which the lawsuit has progressed. Id.

The Sixth Circuit has established "a rather expansive notion of the interest sufficient to invoke the intervention of right." Michigan State AFL-CIO v. Miller, 103 F.3d 1240, 1245 (6th Cir. 1987). An intervening party is not required to have the same standing necessary to initiate a lawsuit. Id. Moreover, "close cases should be resolved in favor of recognizing an interest under Rule 24(a)." Id. at 1247. However, other courts have held that an indirect economic interest is insufficient. E.g., Meridian Homes Corp. v. Nicholas W. Prassas & Co., 683 F.2d 20, 203-041 (7th Cir. 1982) (refusing to permit intervention in case dissolving joint venture when non-party had no management rights in joint venture, but merely an economic interest in profits).

The burden required to show impairment of a proposed intervenor's ability to protect his interest is minimal. Michigan State, 103 F.3d at 1247. Proposed intervenors "need not show that substantial impairment of their interest will result . . . ; the would-be intervenors need only show that an unfavorable disposition 'may . . . impair or impede [their] ability to protect [their] interest.'" Purnell v. City of Akron, 925 F.2d 941, 948 (6th Cir. 1991) (citing FED. R. CIV. P. 24(a)).

---

parties adequately represent that interest."

Finally, "[a]pplicants for intervention must overcome the presumption of adequate representation that arises when they share the same ultimate objective as a party to the suit." United States v. State of Michigan, 424 F.3d 438, 443-44 (6th Cir. 2005). However, the burden is minimal because the applicant for intervention only needs to show a potential for inadequate representation. Id. at 443.

## IV.  ANALYSIS

### A. Timeliness

Huntington Bank filed this action on January 26, 2010; the Court entered the stipulated order on February 4, 2010. Cohen's motion to intervene (Doc. 11) was filed on February 26, 2010, 22 days after the order was entered. Neither Huntington nor the defendants challenge the timeliness of Cohen's motion. Under the circumstances, the Court is satisfied that Cohen's motion is timely.

### B. Substantial Legal Interest

Cohen claims that he has a substantial legal interest in the resolution of Huntington's action against the Big Sky Defendants because he is a member of Big Sky One and Big Sky Two which are members of the Big Sky Defendants. He says that the terms of the stipulated order are unfavorable to his interests and that the Big Sky Defendants did not hold a member vote before consenting to the stipulated order. Huntington and the Defendants say that Cohen is not a member of Big Sky One and Big Sky Two and, therefore, only has an indirect interest in the companies' asset streams as an assignee. Cohen responds by saying that if he is not a members, the Big Sky Defendants should be equitably estopped from saying he is not a member.

### 1. Membership in Big Sky One and Big Sky Two

**a.**

The Michigan Limited Liability Company Act provides default rules regarding the membership rights afforded to assignees of membership interests in Limited Liability Companies. Section 505 states:

> (1) Except as provided in an operating agreement, a membership interest is assignable in whole or in part.
> (2) An assignment of a membership interest does not of itself entitle the assignee to participate in the management and affairs of the company or to become or exercise any right of a member. An assignment entitles the assignee to receive, to the extent assigned, only the distributions to which the assignor would be entitled.

Mich. Comp. L. § 450.4505. Section 506 further states in part that "[u]nless otherwise provided in an operating agreement, an assignee of a membership interest in a limited liability company having more than 1 member may become a member only upon the unanimous consent of the members entitled to vote. Id. § 450.4506(1). As a default rule, assignee is not entitled to membership rights unless the other members unanimously consent to the assignee's admission as a member. However, the default rule can be altered by a company's operating agreement.

**b.**

While substantially the same as the default rules, Big Sky One and Big Sky Two's operating agreements define the rights of assignees and the procedures required for membership. Section 4.7 states that "[n]o assignee shall have any right to vote on or participate in the affairs of the company . . . . A[n] [assingee] who is not admitted as a Member shall be entitled only to the allocations and distributions provided to such Shares

12

in accordance with this agreement." Section 4.8 describes the requirements to be admitted as a member, including unanimous consent of all outstanding membership shares. Thus an assignee is not entitled to vote or participate in management of the company unless the other Members unanimously consent.

Cohen says that he complied with all of the information requests from Big Sky One and Big Sky Two and presumed that the members approved him for membership. However, he has produced no documentation showing that unanimous consent was given. Schonsheck says that Cohen is not a member of Big Sky One and Big Sky Two because the members did not approve his membership by unanimous vote. Without some evidence of consent by the other members, Cohen's mere assumption is an insufficient basis on which to make such a finding. Because Cohen has not shown that he is a member as a matter of law, he is only entitled to a share of Big Sky One and Big Sky Two's profit streams. Without a vote or voice in management, Cohen's indirect interest is insufficient to justify his intervention. See Meridian Homes, 683 F.2d at 204.

### 2. Equitable Estoppel

#### a.

A party can rely on equitable estoppel when "(1) a party by representation, admissions or silence intentionally or negligently induces another party to believe facts, (2) the other party justifiably relies and acts on this belief, and (3) the other party will be prejudiced if the first party is permitted to deny the existence of the facts." Hughes v. Almena Township, 284 Mich. App. 50, 78 (2009) (citing Howard Township Board of Trustees v. Waldo, 168 Mich. App. 565, 575 (1988)).

**b.**

Cohen asserts that Schonsheck and other members of Big Sky One and Big Sky Two treated him in a manner that lead him to believe he was a member, that he relied on that belief by not seeking to protect his assigned interests, and that he will be prejudiced if he is denied a right to participate in the resolution of this action.

Cohen first asserts that Schonsheck and other members of Big Sky One and Big Sky Two treated him in a manner that is consistent with his membership in the companies. The operating agreements of the companies state that "[n]o Transferee shall have any right to vote on or participate in the affairs of the Company, to receive any company information or an accounting of Company funds or affairs unless or until the Transferee shall qualify and be admitted as a Member in accordance with Section 4.8." Despite this language, Cohen was invited to annual member meetings for Big Sky One, Big Sky Two, and the Big Sky Defendants and was given proxy voting forms for each entity; he was consistently provided with periodic accounting statements; and was provided with financial information upon request. Under Big Sky One and Big Sky Two's operating agreements these actions would be permitted if Cohen was a member, but not if he was merely an assignee. In addition, Cohen says that he provided his taxpayer identification number as required by the operating agreement and was not asked for any other documentation. Under these circumstances, it appears that Big Sky One and Big Sky Two treated Cohen in a manner consistent with that of a member and that Cohen was lead to believe that he was a member.

Further, Cohen asserts that he relied on the belief that he was a member by not taking affirmative action to protect his rights in the companies. Had he been aware that he

14

had not been admitted as a member, Cohen could have continued to seek membership in Big Sky One and Big Sky Two. However, Cohen considered such action unnecessary because he believed that he was already a member.

Finally, Cohen would be prejudiced if Big Sky One, Big Sky Two, and the Big Sky Defendants are allowed to deny that he is a member. As a member, Cohen would be entitled to vote on the approval of the stipulated order. Cohen will be prejudiced if this right to vote is withheld.

Cohen has asserted sufficient facts to establish that Big Sky One, Big Sky Two, and Big Sky Defendants should be estopped from asserting that he is not a member. However, Cohen did not assert a theory of equitable estoppel until his reply brief. As a result, Big Sky One, Big Sky Two, and the Big Sky Defendants have not had an opportunity to respond. Should they choose to do so, they will have an opportunity to challenge Cohen's reliance on equitable estoppel as this action progresses.

### 3. Substantial Legal Interest

The practical result of the stipulated order will be the liquidation of the assets of the Big Sky Defendants and a confession of judgment by all defendants. Both of these actions require approval by a majority of the members of each Big Sky Defendant. Because Big Sky One and Big Sky Two hold at least 40% of membership shares in each Big Sky Defendant, their consent is a prerequisite of approval of the stipulated order.

Pursuant to Big Sky One and Big Sky Two's operating agreements, approval of the stipulated order would require a super majority of 80% of the membership shares. First, the agreement arguably includes the transfer of all or substantially all of the assets of the companies because there is no evidence that Big Sky One and Big Sky Two have any

15

assets other than their memberships in the Big Sky Defendants. While the memberships will remain, the transfer of the all of the assets of the Big Sky Defendants is effectively a transfer of all of the assets of Big Sky One and Big Sky Two. In addition, the transfer involved a conflict of interest with the companies' managing director Schonsheck. As described more fully below, Schonsheck and the Schonsheck Trust are both guarantors of the loans made by Huntington Bank. Because the Big Sky Defendants and guarantors will both have an interest in minimizing their own potential liability, there is a conflict of interests between them.

Cohen owns at least 25% of Big Sky One and Big Sky Two. As a result, his approval is required to obtain a super majority vote in either company. Because Cohen's vote is required to obtain a super majority in either Big Sky One or Big Sky Two and Big Sky One and Big Sky Two's consent is required to approve the stipulated order, Cohen's voting interest creates a substantial legal interest in this case.

### C. Impairment of Interest

Cohen claims that approval of the stipulated order without his ability to vote impairs his interest in several ways. First, he says that the stipulated order requires the appointment of a receiver, increases the interest payable under the Notes, eliminates the potential for bankruptcy restructuring, imposes a $300,000 fee, and requires the Big Sky Defendants to pay Huntington's costs and expenses. Because a forced sale will not recoup the full amount owing, Cohen claims that his membership rights will be effectively eliminated by the stipulated order. Further, the stipulated order prohibits anyone from "initiating, commencing, continuing, or taking any action to establish or enforce any claim, right or interest against Borrowers, Receiver, the Property, or Receiver's duly authorized

16

agents." Thus Cohen will be unable to protect his rights through a secondary action against the Big Sky Defendants. While Huntington asserts that Cohen can still maintain an ultra vires claim against the Big Sky Defendants, such a claim would be futile if the assets of the Big Sky Defendants had already been liquidated.

Huntington also claims that Cohen's rights will not be impaired because Cohen does not contest that the Big Sky Defendants are in default and the stipulated order merely incorporates Huntington's rights under the loan agreement with the Big Sky Defendants. This argument misses the point. As a member of Big Sky One and Big Sky Two, Cohen has a right to vote on any approval of the stipulated order. His interest is impaired if he is unable to exercise his right to vote. Even if Huntington expects that successful litigation of its claims would result in the same outcome as the stipulated order, Cohen has a right to object to the stipulated order and require Huntington to prove its case.

### D. Inadequate Representation

Cohen claims that he is not adequately represented by the defendants in this case due to conflicts of interest. Schonsheck, the managing director of Big Sky One, Big Sky Two, and Big Sky Defendants, as well as the other members of Big Sky One and Big Sky Two are also guarantors of the Huntington loans and have been named as defendants in this case. Because these individuals risk personal liability along with their membership interests in Big Sky One and Big Sky Two, their interests diverge from that of Cohen who only risks his interest in the companies. The fact that the guaranty defendants were willing to approve the stipulated order without requiring the consent of the members of Big Sky Defendants, Big Sky One, or Big Sky Two suggests that their membership interests is not their primary concern. Even if Huntington is correct in asserting that all parties have the

17

same interest in obtaining the highest possible price for the Big Sky Defendants' assets, there is a sufficient divergence between the interests of Cohen and the current defendants to justify his intervention.

## V. Conclusion

Cohen has met each of the four elements required for intervention as of right under Fed. R. Civ. P. 24(a). As a result his motion to intervene is GRANTED. For all that the Court knows, it may be a self-inflicted wound. The consequences of allowing his intervention are for another day.

SO ORDERED.

                                            s/Avern Cohn
                                            AVERN COHN
                                            UNITED STATES DISTRICT JUDGE

Dated: June 29, 2010

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, June 29, 2010, by electronic and/or ordinary mail.

                                            s/LaShawn R. Saulsberry
                                            Case Manager, (313) 234-5160