UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE HUNTINGTON NATIONAL BANK, a national
banking association,

    Plaintiff,

-vs-

Case No.10-10346
Hon: AVERN COHN

BIG SKY DEVELOPMENT FLINT, LLC, a Michigan
limited liability company, BIG SKY DEVELOPMENT
GRAND RAPIDS, LLC, a Michigan limited liability
company, BIG SKY DEVELOPMENT SALINE, a
Michigan limited liability company, IAN W.
SCHONSHECK, individually and as TRUSTEE OF
IAN W. SCHONSHECK REVOCABLE LIVING TRUST
AGREEMENT DATED 12/11/90, AS AMENDED,
STEPHAN J. DACKIW, individually and AS TRUSTEE
OF THE STEPHAN J. DACKIW TRUST AGREEMENT,
DATED 6/22/99, RICHARD J. HARTIGAN, individually
and AS TRUSTEE OF THE RICHARD J. HARTIGAN
TRUST AGREEMENT, DATED 9/19/96, HYMAN
STOLLMAN, individually and AS TRUSTEE OF THE
HYMAN STOLLMAN REVOCABLE LIVING TRUST,
DATED 10/28/93, jointly and severally,

    Defendants,

and

BARRY COHEN,

    Intervenor.
_____/

**MEMORANDUM AND ORDER
DENYING BARRY COHEN'S MOTION TO VOID SETTLEMENT AND
FORBEARANCE AGREEMENT AND SET ASIDE STIPULATED ORDER
APPOINTING RECEIVER; AND
GRANTING RECEIVER AND HUNTINGTON'S EXPEDITED MOTION FOR ORDER(I)
APPROVING AND CONFIRMING SALE OF RECEIVERSHIP PROPERTIES AND (II)
TRANSFERRING ALL LIENS, MORTGAGES, CLAIMS, SECURITY INTERESTS AND
OTHER ENCUMBRANCES TO THE NET PROCEEDS OF SALE**

## I. INTRODUCTION

This is a contract case. Defendants Big Sky Development Flint, LLC; Big Sky Development Grand Rapids, LLC; and Big Sky Development Saline, LLC (collectively Big Sky) are Michigan Limited Liability Companies. Plaintiff Huntington National Bank (Huntington) made loans to Big Sky, which were secured by mortgages on real property located in Flint, Grand Rapids, Saline, and Wixom, Michigan. After Big Sky defaulted on its loans, Huntington filed this action to collect payment on the loans secured by the Flint, Grand Rapids, and Saline properties (collectively Property), seeking more than $13 million still owing under the mortgage plus unpaid property taxes.[1] Huntington also filed a claim in Oakland County Circuit Court to recover on the loans secured by the Wixom property. The parties agreed to a stipulated order appointing a receiver, which was entered by the Court. (Doc. 6). Barry Cohen (Cohen), a disputed Big Sky Member, filed a motion to intervene to contest the receivership. The Court granted the motion, finding that Cohen stated sufficient facts to allow him to assert his membership rights. (Doc. 22). Since that time, an offer has been made to purchase the Property. The offer is currently pending.

Now before the Court are two motions. First, Cohen's motion to void the settlement and forbearance agreements and set aside the stipulated order appointing the receiver. (Doc. 24). Second, the Receiver's expedited consideration request, joined by Huntington, for an order approving the sale of the receivership property and transferring all liens,

---

[1]$13,320,911.03 was the amount Big Sky owed on the Flint, Grand Rapids, and Saline properties as of January 1, 2010, the date on which the Complaint was filed. At the September 13, 2010, motion hearing, Huntington advised the Court that the debt owed has now reached $18 million plus over $1 million in unpaid property taxes.

mortgages, claims, security interests and other encumbrances to the net proceeds of sale. (Doc. 32).

Related to the first motion, Cohen says that Big Sky's approval of the stipulated order violated the terms of the Big Sky Operating Agreements because it was agreed to without first obtaining Cohen's consent, which he argues was required for Big Sky to obtain membership majority consent. Big Sky does not concede Cohen's membership, but says that even if Cohen is a member, his voting rights are diluted to zero because he failed to pay capital calls as required under the Big Sky Operating Agreements. Huntington further states that the receivership appointment is valid under the terms of the loan agreements entered into by Huntington and Big Sky.

Related to the second motion, the receiver says the Court has authority to approve the pending Property sale free of all encumbrances. Cohen says the sale is beyond the receiver's scope of authority. Cohen also asserts that the sale is not in the best interest of the estate.

For the reasons that follow, Cohen's motion will be denied and the Receiver and Huntington's motion will be granted.

## II. FACTS

The facts are set forth in parties' papers, many of which are repeated here.

### A. Cohen's Big Sky Membership Interests

### 1. Assignment

On July 31, 2008, Ronald Hagen Sr., Ronald Hagen Jr., Executive A.I.D., Great Northern Start Limited Partnership, and U.S. Storage Depot, LLC (collectively U.S. Storage)

3

assigned all of their membership interests in Big Sky One and Big Sky Two to Cohen. The assignment gave Cohen a twenty-five percent ownership interest in Big Sky One and a fifty percent ownership interest in Big Sky Two.[2]

Big Sky recognizes the assignment, but disputes that Cohen is a member, asserting that it never consented to his admission. On June 29, 2010, this Court estopped Big Sky from asserting Cohen's lack of membership and allowed Cohen to assert his membership rights as intervenor. (Doc. 22).

### 2. Capital Call Obligations

On June 1, 2007, prior to U.S. Storage's assignment to Cohen, Big Sky made three capital calls to its members. U.S. Storage's obligation was $539,500. U.S. Storage did not pay the capital calls; the liability transferred to Cohen as assignee. The capital calls remain unpaid.

### B. Current Dispute

In his motion, Cohen seeks to void the settlement and forbearance agreement and set aside the stipulated order appointing the receiver. Incident to the relief requested is a disruption of the Property sale. Huntington and Big Sky oppose Cohen's motion and seek Court approval of the sale free and clear of all liens and encumbrances.

---

[2]Cohen's exact ownership interest was previously in dispute, as Cohen's 2008 Schedule K-1 states that he has a 50% ownership interest in Big Sky Two, but Big Sky's Managing Director says in an affidavit that Cohen's ownership interest is 25%. (Doc. 22 p.4). However, the capital calls made to Cohen state that he has a 50% interest. (Doc. 29). Thus, the Court deems the dispute resolved.

4

### 1. Settlement and Receivership

As stated, Big Sky defaulted on its loans to Huntington and Huntington filed the present action. Huntington and Big Sky reached a partial settlement, memorialized in the receivership order. (Doc. 6). The settlement includes appointment of a receiver, a confession of judgment against each defendant, and a complete waiver and release of all claims that the defendants may have had against Huntington. It also increases the interest rate on unpaid loans and requires Big Sky to pay $300,000 to Huntington. As consideration, Huntington agrees to a forbearance period until September 30, 2010, during which it would refrain from entering the consent judgment or pursuing the guarantee defendants.

### 2. Stipulated Order Appointing Receiver

The receivership order was stipulated to and signed by Big Sky and Huntington. The order gives the receiver the power to sell the Property. Under the order,

> 4. Receiver shall have the fullest powers and duties of a receiver permitted under applicable law and equity. Without limiting the generality of the foregoing, Receiver's authority, powers and duties include, but are not limited to, the right to:
>
>> a. use, operate, manage, market, list for sale, sell, negotiate and execute sales agreements with potential buyers of the Property . . . .

(Doc. 6 p. 4).

> 8. Receiver is authorized and directed to sell the Property together or separately, subject to the following conditions:
>
>> a. The sale shall be a cash sale for the best price obtainable;
>>
>> b. The terms and conditions of sale shall be appropriate in the reasonable business judgment of Receiver;

  c. Subject to Huntington's consent, Receiver shall have the authority to take any actions the Receiver deems reasonable and appropriate in order to sell the Property including, but not limited to, retaining a broker and listing the Property for sale;

  d. The sale of the Property shall be free and clear of any and all liens, claims, security interests and other encumbrances whatsoever, which shall be transferred to the net proceeds of sale of the Property;

  e. The sale shall be subject to the prior consent of Huntington and an order of the Court approving the sale upon notice to all parties in interest and a hearing.

(Doc. 6 p. 6).

### 3. Property Sale

On August 4, 2010, the Receiver and Buyer Storage Pros Acquisition LLC entered into an Offer to Purchase for the Big Sky properties at a total purchase price of $7.75 million, out of which $6.2 million is allocated to the Flint, Grand Rapids, and Saline properties being handled in this action and $1.55 million is allocated to the Wixom property being handled in the Oakland County action.[3] The Receiver and Huntington approved the Purchase Agreement's price and terms, pursuant to the receivership order. The sale is currently pending, contingent on buyer's unfinished due diligence and pending the outcome of both actions.

At a September 13, 2010, hearing on the motions, Barry Lefkowicz, in his capacity as receiver, testified that he deemed the purchase price and property marketing appropriate. Also at the hearing, Huntington stated that Big Sky's outstanding loan

---

[3] The purchase price allocation for all properties is as follows: Flint property, $1.9 million; Grand Rapids property, $2.2 million; Saline property, $2.1 million; Wixom property $1.55 million.

balances on the Property now exceed $18 million plus over $1 million in unpaid property taxes. Finally, according to Huntington, the Property recently appraised at $8.2 million.

### C. The Contracts

#### 1. The Big Sky Operating Agreements

The Big Sky Operating Agreements contain the following pertinent provisions:

> 6.3 Limitation on Powers: No act shall be taken, sum expended, decision made, obligation incurred, or power exercised by any Manager on behalf of the Company except by the consent of the Majority Interest[4] with respect to:
>
> > (a) any sale, conveyance, mortgage, grant or a security interest in, pledge, exchange or other disposition, or encumbrance of all or part of the Property, the Project or any other Company property . . .
> >
> > (d) a transaction involving an actual or potential conflict of interest between a Member and the Company . . .
> >
> > (g) confession of judgment against the Company.

(Doc. 11-3).

> 10.3 Additional Capital Calls:
>
> > (b) If any Member fails to advance all or any portion of his or her share of any additional capital called for by the Company within the time period described above, another Member or Members may contribute all or part of the amount which such defaulting member failed to advance. In such event, and following such contributions, the defaulting and contributing Members' respective Ownership Percentage Interests shall be adjusted accordingly. . . .

(Doc. 11-4).

---

[4]Majority Interest is defined in the Operating Agreements as "those Members holding more that 75% of the Membership percentages held by the Members."

## 2. The Loan Documents

### i.

Under the loan agreements, Huntington has the right to seek appointment of a receiver and Big Sky consents to appointment of a receiver in the event of a default. (Doc. 26-2). The pertinent provisions are as follows:

> 9.4 Receivership. Upon or at any time after the filing of a complaint to foreclose the Mortgage, the court in which such complaint is filed shall, upon application of Lender, appoint a receiver of the Property. Such appointment may be made either before or after sale, without regard to the solvency or insolvency of Borrower at the time of application for such receiver and without regard to the then value of the Property or whether the same shall be then occupied as a homestead or not and Lender or any holder of the Note may be appointed as such receiver. Such receiver shall have power to collect the rents, issues, and profits of the Property during the pendency of such foreclosure suit and during the full statutory period of redemption, if any, whether there will be redemption or not, as well as during any further times when Borrower, except for the intervention of such receiver, might be entitled to collect such rents, issues and profits, and all other powers which may be necessary or are usual in such cases for the protection, possession, control, management and operation of the Property during the whole of said period. . . . Borrower consents to the appointment of a receiver of a Property.

(Doc. 26-2 pp. 43-44).

### ii.

Under the mortgage agreements, Big Sky, as mortgagor, consents to appointment of a receiver if it fails to pay taxes and that the court determines the scope of the receivership. (Doc. 26-3). The pertinent provisions are as follows:

> Failure of the Mortgagor to pay any taxes, assessments or governmental charges levied or assessed against the Property . . . shall constitute waste. . . . Upon happening of such acts of waste and on proper application made thereof by Mortgagee to a court of competent jurisdiction, the Mortgagee shall forthwith be entitled to the appointment of a receiver of the Property hereby mortgaged and of the earnings, income, issues and profits thereof,

with such powers as the court making such appointment shall confer; the
Mortgagor hereby irrevocably consents to such appointment and waives
notice of any application therefor.

(Doc. 26-2 p. 6).

### iii.

Finally, under the loan modification agreement, Big Sky waives all defenses, counterclaims, and setoffs related to the defaulted loans. (Doc. 26-5).

> Borrower hereby acknowledges and agrees that Borrower has no claims,
> defenses or setoffs against the Bank for the amounts owing evidenced by the
> Note and any Loan Documents and to the extent Borrower has or may have
> a claim or defense as to the amount owing (as of the date hereof), whether
> known or unknown, the same are hereby waived and/or released.

(Doc. 26-5 p. 3).

## III. THE LAW

### A. Assignee Liability

The Michigan Liability Act states:

> An assignee who becomes a member . . . is subject to the restrictions and
> liabilities of a member under the articles of organization, an operating
> agreement, and this act. An assignee who becomes a member also is liable
> for any obligations of his or her assignor to make contributions . . . .

Mich. Comp. Laws § 450.4506(2).

### B. The Receivership

Federal courts may appoint receivers over disputed assets under its "traditional, common law powers of equity." Liberte Capital Group, LLC v. Capwill, 462 F.3d 543, 551 (6th Cir. 2006) (citing Fed. R. Civ. P. 66). Particularly, "a district court has broad powers in fashioning relief in an equity receivership proceeding." Liberte, 462 F.3d at 551 (quoting Liberte Capital Group, LLC v. Capwill, 421 F.3d 377, 382 (6th Cir. 2006)). "As an

9

officer of the court, the receiver's powers are coextensive with his order of appointment." Liberte, 462 F.3d at 551.

### C. Relief under Federal Rule of Civil Procedure 60(b)(6)

"Relief under Rule 60(b) is circumscribed by public policy favoring finality of judgments and termination of litigation." Blue Diamond Coal Co. v. Trustees of UMWA Combined Ben. Fund, 249 F.3d 519, 524 (6th Cir. 2001) (quoting Waifersong Ltd., Inc. v. Classic Music Vending, 976 F.2d 290, 292 (6th Cir.1992)) (internal quote marks omitted). "This is especially true in an application of subsection (6) of Rule 60(b), which applies only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." Blue Diamond, 249 F.3d at 524 (quoting Olle v. Henry & Wright Corp., 910 F.2d 357, 365 (6th Cir.1990)) (internal quote marks omitted); see also Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 863-64 (1988). "Courts must apply Rule 60(b)(6) relief only in 'unusual and extreme situations where principles of equity mandate relief.'" Blue Diamond, 249 F.3d at 524 (quoting Olle, 910 F.2d at 365).

### IV. ANALYSIS

### A. Cohen's Motion to Void Settlement and Receivership Order

Cohen says that the settlement and receivership order must be set aside because Big Sky did not have the authority to stipulate to them under the Big Sky Operating Agreements. Cohen asserts that, under the Operating Agreements, majority consent was required by Big Sky Members with respect to the settlement, the consent to judgment against them, and the property sale. Because Cohen is a member and he did not consent to the contractual agreements, Cohen says they are void. Cohen asks this Court to set

10

aside the receivership order under its authority to set aside final judgments in "extraordinary circumstances" and "upon such terms are just." Fed. R. Civ. Proc. 60(b)(6).

Big Sky says that Cohen failed to fulfill his $539, 500 capital call obligation, for which he is liable as an assignee under Michigan law. Also relying on the Operating Agreements, Big Sky says that any membership rights that Cohen may have had are diluted to zero because of his failure to pay. Thus, Big Sky says Cohen has no voting rights and his consent was not required to approve the disputed transactions.

Huntington says, regardless of the Operating Agreements, the loan documents give Huntington the right to seek appointment of the receiver in the event of default. Particularly, Huntington says that because Big Sky consented to appointment of a receiver in the signed loan agreements (Doc. 26-2), mortgage documents (Doc. 26-3), and loan modification agreements (Doc. 26-5), the receiver appointment is valid. Further, Big Sky waived all defenses, counterclaims, and setoffs in the loan modification agreements. (Doc. 26-5). Thus, Huntington says, because it is not disputed that the loans went into default, which triggered the aforementioned provisions, Cohen's assertions that the receivership is void are futile.

The Court agrees with Big Sky and Huntington. Under Michigan law, Cohen, as assignee, assumed the liabilities of his assignor and is bound by the Big Sky Operating Agreements. Cohen did not fulfill his capital call obligations. Thus, Cohen breached the Operating Agreements and his ownership percentage was diluted to zero. Moreover, Cohen lost his voting rights because he failed to pay the capital calls. Thus, Cohen's vote was not required to approve the receivership, the settlement, or the consent to judgment against Big Sky.

Further, in the governing loan documents, Big Sky agreed to give Huntington the right to appoint a receiver and to waive all defenses, counterclaims, and setoffs in the case of default. Big Sky defaulted on the loans, triggering said provisions and giving Huntington a contractual right to appoint a receiver without contest from Big Sky. Moreover, the loan documents were drafted and signed prior to Cohen's assignment in 2008. Thus, not only does Huntington have a contractual right to appoint a receiver, Cohen's argument that his lack of consent destroys the contract is meritless because the complained of transactions were the result of default provisions agreed to before Cohen's assignment. In other words, Cohen assumed the provisions contained in the loan documents related to default and he has no right to attack them.

Next, relying on his assertion that Big Sky violated the Operating Agreements, Cohen says that this Court should set aside the settlement agreement and the receivership order. As an initial matter, because the Court finds that Cohen's membership rights are diluted, it follows that Big Sky did not violate the Operating Agreement in not obtaining Cohen's consent. Second, Cohen offers no authority for his claim that he is entitled to relief under the Federal Rules of Civil Procedure. As Cohen concedes, a district court should use its authority to relieve a party from a final judgment only in "extreme circumstances" and "whenever such action is appropriate to accomplish justice." Liljeberg v. Health Serv. Acquisition Corp., 486 U.S. 847, 863-64 (1988). Cohen has not shown that Big Sky violated the Operating Agreement or that an extreme injustice has occurred. Thus, Cohen's claim for relief under Fed. R. Civ. Proc. 60(b)(6) must fail.

Finally, Cohen challenges the receiver's scope of authority. This argument, too, must fail. It is well settled that federal courts have broad powers in equity receivership

proceedings and that a receiver's authority is "coextenstive with his order of appointment." Liberte, supra. The receivership order entered by the Court gives the receiver the power of sale. Thus, the receiver is acting within the scope of his authority in selling the Property. Cohen's argument is without merit.

## B. Receiver and Huntington's Expedited Motion to Approve Sale

Receiver Barry Lefkowitz (Lefkowitz) and Huntington, by way of joinder, seek Court approval of the pending Property sale. Lefkowitz and Huntington also ask the Court to transfer all liens, mortgages, claims, security interests and other encumbrances to the net proceeds of sale.

Lefkowitz says the Court has authority to approve the property sale free and clear of encumbrances under the receivership order. Lefkowitz cites to Michigan and Federal law to support his assertion. M.C.L. § 600.2926 (giving Courts the power to "define the receiver's power and duties where they are not otherwise spelled out by law"); 11 U.S.C. § 101 et seq. (Bankruptcy Code provisions authorizing trustees to sell properties free and clear of encumbrances in certain circumstances); M.C.L. 5701.1101 et seq. (giving Courts the authority to direct sales, including resolution of liens, encumbrances, and other rights).

Cohen responds by arguing that the pending sale cannot be approved because the receiver does not have the power of sale. However, as stated above, the receiver does have the authority to sell the Property. Thus, Cohen's argument has not merit. Further, Cohen invokes the Federal Receiver Statute, 28 U.S.C. § 2001, claiming that, before a private sale can be approved, the Court must appoint disinterested appraisers, require the

13

sale price to be no less than two-thirds of the appraised value, and publish the sale in a newspaper at least ten days before the sale is approved. See 28 U.S.C. § 2001(b).

After advancing this argument, however, Cohen next concedes that 28 U.S.C. § 2001 is inapplicable because these requirements were waived as part of the receivership order, to which Big Sky stipulated. (Doc. 6 p. 7). Cohen says, despite Big Sky's stipulation, the Court should not approve the sale because the sale has not been shown to be in the best interest of the estate, asserting that the Property was not properly marketed. Cohen's argument relies only on the fact that he was "informed and believes" that the "responsible broker was not sufficiently experienced in the marketing and sale of self-storage facilities" and that the marketing techniques used were "erroneous" and "out of date." To support this assertion, Cohen says that the Property was marketed as an "all cash" sale when in fact 70% of the sale is being financed by Huntington. Cohen says that if this fact would have been marketed, more investors would have been attracted and willing to pay a higher price.

Cohen's argument is without merit. Under the receivership order, Lefkowicz has "the fullest powers and duties of a receiver permitted under applicable law and equity," including the power to "negotiate and execute sales." In other words, Lefkowicz is responsible for executing and managing the sale of the Property, not Cohen. Lefkowicz testified that the Property was marketed properly and sold at an appropriate price based on his experience as a receiver and in the insolvency business. The Court agrees. The sale price is less than the appraised value by a nominal amount. The outstanding loan amount exceeds the sale price and appraised value by over $5 million. Finally, Cohen has no ownership rights with which to contest Big Sky's consent to the Purchase Agreement. Cohen has not

14

presented persuasive evidence to allow a contrary finding. Thus, the Court agrees that the sale should proceed.

## V. CONCLUSION

Thus, for the aforementioned reasons, Cohen's Motion to Void the Settlement and Forbearance Agreement and To Set Aside Stipulated Order Appointing Receiver is DENIED. Lefkowicz and Huntington's Expedited Motion for Order (I) Approving and Confirming Sale of Receivership Properties and (ii) Transferring all Liens, Mortgages, Claims, Security Interests and Other Encumbrances to Net Proceeds of Sale is GRANTED.

SO ORDERED.

    s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: September 16, 2010

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, September 16, 2010, by electronic and/or ordinary mail.

    s/Shawntel Jackson
Relief Case Manager, (313) 234-5160